IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALENA TROIA, on behalf of herself and all others similarly situated, | |
| Plaintiff, | No. 20-cv-05229 |
| v. | Judge John F. Kness |
| NORTH CENTRAL COLLEGE, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Alena Troia was a student at Defendant North Central College in early 2020—a notorious time when the then-novel SARS-CoV-2 virus and resulting COVID-19 pandemic upended business as usual across the globe. In response to the pandemic, and in compliance with state orders, Defendant closed its educational facilities and transitioned to remote, online learning for the remainder of the Spring 2020 semester.

Plaintiff brought the present lawsuit, on behalf of herself and a putative class, alleging that Defendant's move to virtual instruction was a breach of contract or, in the alternative, unjust enrichment. Plaintiff alleges that a variety of sources—Defendant's website and related promotional materials; its course catalog and class registration process; its historical practice of in-person instruction; and its admission letter—express (or at least imply) that Defendant was obliged to provide in-person and on-campus instruction. According to Plaintiff, Defendant's changes in response

to the pandemic breached its duty, and the quality of education and services Defendant subsequently provided were "materially different" and of "diminished value." Plaintiff seeks a partial refund of the tuition and fees for the in-person services and facilities that she paid for but did not receive. Defendant has moved to dismiss this case under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failing to state a viable claim.

For the reasons that follow, Defendant's motion (Dkt. 22) is denied. Drawing all reasonable inferences in Plaintiff's favor, Plaintiff plausibly alleges the existence of an implied contract that Defendant breached when it shifted its policies and practices in response to the pandemic. *See Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873 (7th Cir. 2022). Plaintiff has also sufficiently alleged an unjust enrichment claim in the alternative, and under applicable precedent, the parties' disagreement about whether their contract "includes an implied promise to provide students in-person instruction and access to on-campus facilities" is "enough" for the claim "to survive a motion to dismiss . . . ." *Id.* at 887. Accordingly, Defendant's motion to dismiss is denied.

I. **BACKGROUND**

Defendant North Central College is a private college in Naperville, Illinois. (Dkt. 19 ¶ 28.) In the 2019-2020 academic year, Defendant had more than 3,500 undergraduate and graduate students on its rolls. (*Id.* ¶ 73.) Undergraduates—including Plaintiff Alena Troia—paid approximately $19,930 in tuition and $100 in mandatory student activity fees. (*Id.* ¶ 2, 14.) When Plaintiff accepted Defendant's

2

offer of admission, she and Defendant formed a general contract; that contract obligated Defendant to provide educational services in exchange for Plaintiff's deposit and her promise to pay the requisite tuition and fees. (*Id.* ¶ 38.) Plaintiff alleges that, under the express and implied terms of the contract, Defendant agreed to provide in-person and on-campus instruction. (*Id.* ¶ 39.) According to Plaintiff, the terms of the parties' agreement, as well as evidence of the university's contractual promise for in-person instruction, are found—expressly or impliedly—in Defendant's marketing materials and on its website; in its admission letters; in Defendant's course catalogs; and through Defendant's customary practice of providing in-person instruction. (*Id.* ¶ 82.)

On March 13, 2020, in response to the COVID-19 pandemic and in compliance with an order of the State of Illinois that universities were remain open only for purposes of distance learning, research, and limited essential functions, Defendant closed its campus and transitioned to online classes for the remainder of the Spring 2020 semester. (*Id.* ¶¶ 4–5.) Plaintiff "does not dispute" the appropriateness of Defendant's decision to eliminate in-person instruction to comply with COVID-19 protocols and protect the health and safety of Defendant's community. (*Id.* ¶ 5.) Instead, Plaintiff finds fault with the "lesser" value of online classes and remote learning she received relative to the tuition she paid. (*Id.* ¶¶ 8, 96.) According to Plaintiff, Defendant's decision to move classes online denied her the education for which she contracted. In addition to the fact that tuition and fees are higher for in-person instruction than for online classes, Plaintiff alleges that online classes are

3

"materially different" and of "diminished value" compared to the "full academic opportunities of in-person instruction." (*Id.* ¶¶ 7–8, 56–57, 66.) Plaintiff challenges Defendant's decision to retain the full amount of tuition and fees "when it was unable to provide" in-person educational services and experiences. (*Id.* ¶¶ 5, 7.)

On December 30, 2020, Plaintiff filed the present class action lawsuit seeking reimbursement of the pro-rated tuition and fees she paid for the portion of the Spring 2020 semester and future semesters affected by COVID-19 "after classes moved from in-person to online and facilities were closed."[1] (Dkt. 19 ¶¶ 65–68.) Plaintiff alleges that Defendant breached the parties' contract, and she seeks "reimbursement of certain tuition, Mandatory Fees, and other expenses that were collected by North Central for services that North Central has failed to deliver" (Count I). (*Id.* ¶¶ 80–89.)

---

[1] Plaintiff attempts to bring this lawsuit on behalf of a class of "[a]ll persons who paid, or will pay, tuition and/or the Mandatory Fees for a student to attend in-person class(es) during the semesters affected by COVID-19 at North Central but had their class(es) moved to online learning." (Dkt. 19 ¶¶ 69-79.) Plaintiff estimates that the number of class members is at least 3,500 undergraduate and graduate students who were enrolled for the 2019-2020 school year at North Central College, and she argues that there is a "well-defined community of interest" among the class members regarding Defendant's transition to online learning. (*Id.* ¶¶ 73, 74, 76.) Although Defendant argues that "any claims seeking the refund of tuition or fees beyond Spring 2020 fail as a matter of law" because the complaint "says nothing about on-campus services after the Spring 2020 semester" (Dkt. 23 at 14-15), the Court will not address the adequacy of Plaintiff's ability to represent students seeking refunds for other semesters at this stage in the litigation. *See Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 700 (N.D. Ill. 2020) ("Allowing a named plaintiff to bring claims on behalf of others with substantially similar injuries allows courts to bundle cases about the same basic practice . . . . And later, when considering a motion for class certification, courts can weed out claims if the class representative is not sufficiently similar to members of the putative class." (citation omitted)); *In re Sys. Software Assocs., Inc.*, No. 97-cv-177, 2000 WL 283099, at *1 n.1 (N.D. Ill. Mar. 8, 2000) ("The court notes that the adequacy of the named Plaintiffs as representatives of the class is an issue for a motion for class certification, and is not properly resolvable on a motion to dismiss for failure to state a claim.").

4

In the alternative, Plaintiff alleges that Defendant "unfairly and inequitably" retained her tuition and fees despite ceasing to provide the full educational services for which the expenses were collected. (*Id.* ¶ 95.) Retaining such monetary benefits while providing the "lesser value" of online instruction and a virtual campus, Plaintiff alleges, would constitute unjust enrichment (Count II). (*Id.* ¶¶ 96–97.)

Defendant has moved to dismiss Plaintiff's case in its entirety. (Dkt. 22.) Defendant argues, in summary, that (1) Plaintiff's claims amount to educational malpractice, which is noncognizable under Illinois law; (2) Plaintiff fails to state a claim for breach of contract because she has not sufficiently alleged the existence of an enforceable implied or express contract that obligated Defendant to provide in-person instruction; and (3) Plaintiff cannot bring a claim for unjust enrichment because, under Illinois law, such a remedy is unavailable where a contract governs the parties' relationship. (*Id.*)

Plaintiff is not the only current or former student to challenge her university's policies and practices relating to the COVID-19 phenomenon. In the wake of the pandemic, courts across the country have grappled with claims similar to those presented in this case. Judges in this District have uniformly rejected such claims. *See, e.g.*, *Miller v. Lewis Univ.*, 533 F. Supp. 3d 678 (N.D. Ill. 2021) (dismissing breach of contract and unjust enrichment claims brought by student against university); *Buschauer v. Columbia Coll. Chi.*, No. 20-cv-3394, 2021 WL 1293829 (N.D. Ill. Apr. 6, 2021) (same); *Oyoque v. DePaul Univ.*, 520 F. Supp. 3d 1058 (N.D. Ill. 2021) (same); *Hernandez v. Ill. Inst. of Tech.*, No. 20-cv-3010, 2021 WL 1600171 (N.D. Ill. Apr. 23,

5

2021) (same); *Polley v. Nw. Univ.*, No. 20-cv-4798, 2021 WL 4192076 (N.D. Ill. Sept. 15, 2021) (same). As those judges explained, none of the materials identified by the plaintiffs in those cases "amount[ed] to a concrete contractual promise to provide in-person educational services, experiences, or opportunities." *Oyoque*, 520 F. Supp. 3d at 1065.

In *Gociman v. Loyola University of Chicago*, however, the Seventh Circuit reached the opposite conclusion—in favor of the student plaintiffs. 41 F.4th 873 (7th Cir. 2022). Regarding the plaintiffs' breach of contract claim, *Gociman* explained that "the students' complaint states a claim for breach of an implied contract under Illinois law . . . ." *Id.* at 878. As to the plaintiffs' unjust enrichment claim, the Seventh Circuit noted that the parties' disagreement regarding "whether the contract includes an implied promise to provide students in-person instruction and access to on-campus facilities" is alone "enough for the students' unjust enrichment claim to survive a motion to dismiss." *Id.* at 887. But because the complaint contained a pleading error where the plaintiffs included by reference allegations of the existence of a contract between the parties, the court remanded, directing that "on remand the district court should allow the students a chance to amend their unjust enrichment allegations." *Id.* Through its decision in *Gociman*, the Seventh Circuit joined the D.C. Circuit in allowing such claims to survive a motion to dismiss. *See Shaffer v. George Washington Univ.*, 27 F.4th 754, 763 (D.C. Cir. 2022) (student plaintiffs had "adequately allege[d] the Universities breached an implied-in-fact contract to provide in-person education in exchange for tuition").

6

## II. STANDARD OF REVIEW

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put another way, the complaint must present a "short, plain, and plausible factual narrative that conveys a story that holds together." *Kaminski v. Elite Staffing*, Inc., 23 F.4th 774, 777 (7th Cir. 2022) (cleaned up). In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. But even though factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Id.* at 678–79.

## III. DISCUSSION

### A. Breach of Contract (Count I)

Plaintiff alleges that, in exchange for her tuition and fees, Defendant agreed to provide "in-person educational opportunities, experiences, and services to enrolled students." (Dkt. 19 ¶ 83.) According to Plaintiff, a variety of specific sources and categories of sources expressly or impliedly reflect Defendant's obligation: its website and related promotional materials (*id.* ¶¶ 23–31); its course catalog and class

7

registration process (*id.* ¶¶ 32–33); its historical practice of in-person instruction (*id.* ¶ 34); and its admission letter (*id.* ¶ 40).² In Count I, Plaintiff alleges that Defendant breached its duty by failing to provide the promised opportunities, experiences, and services during the "semesters affected by COVID-19." (*Id.* ¶ 86.)

To bring a breach of contract claim under Illinois law,³ Plaintiff must allege "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiffs; (3) a breach by the defendant; and (4) resultant damages." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (internal quotation marks omitted). The contract may be either express or implied. *See Williams v. Wendler*, 530 F.3d 584, 589 (7th Cir. 2008). If a plaintiff alleges the breach of an implied contract, she must still "be specific about the source of this implied contract, the exact promises the university made to the student, and the promises the student made in return." *Charleston v. Bd. of Trustees of Univ. of Ill. at Chi.*, 741 F.3d 769,

---

² Although Plaintiff does not attach the admission letter or course catalog to the complaint, it is "well settled that in deciding a Rule 12(b)(6) motion, a court may consider documents attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to his claim." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (quotation omitted). Because Plaintiff references and relies upon Defendant's admission letters and the course catalog, and because those materials are central to her breach of contract claim, the Court considers those documents in evaluating Defendant's motion.

³ This Court has diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Plaintiff alleges that the amount in controversy in this class action exceeds $5 million exclusive of interests and costs, and that at least one member of the putative class is a citizen of a state different from Defendant. (Dkt. 19 ¶ 20.) Defendant does not challenge these allegations. Because jurisdiction is based on diversity of citizenship, "the substantive rights of the parties are governed by state law." *Help At Home Inc. v. Med. Cap., L.L.C.*, 260 F.3d 748, 753 (7th Cir. 2001). In this case, the applicable state law is that of Illinois. *See, e.g., ABC Int'l, Inc. v. GD Grp. USA Co.*, No. 20-CV-1579, 2021 WL 4459462, at *2 (N.D. Ill. Sept. 29, 2021).

773 (7th Cir. 2013). Plaintiff "must do more than simply allege that the education was not good enough. Instead, [she] must point to an identifiable contractual promise that the defendant failed to honor." *Fleming v. Chi. of Pro. Psych.*, No. 15-cv-9036, 2019 WL 247537, at *3 (N.D. Ill. Jan. 16, 2019) (quoting *Ross v. Creighton Univ.*, 957 F.2d 410, 416–17 (7th Cir. 1992)).

As a preliminary matter, Defendant's argument that Plaintiff's breach of contract claim should be construed as one for educational malpractice is unpersuasive. Defendant argues that Plaintiff's claims "amount to allegations of educational malpractice and are not cognizable under Illinois law." (Dkt. 23 at 4.) It is true that, in Illinois, a claim that "raises questions about the reasonableness of an educator's conduct in providing educational services" or "requires an analysis of the quality of education" is noncognizable. *Waugh v. Morgan Stanley and Co., Inc.*, 966 N.E.2d 540, 549 (Ill. App. Ct. 2012). And some of Plaintiff's claims may be construed as challenging the quality of Defendant's education services. (*See, e.g.*, Dkt. 19 ¶¶ 55, 57, 66 (alleging the "diminished value of on-line learning" was "not equivalent to," and was "materially different compared to[,] the educational experience previously afforded to [North Central students]").)

But read in the light most favorable to Plaintiff, *see Iqbal*, 556 U.S. at 678, the complaint does not primarily challenge the quality of Defendant's remote education. Instead, the crux of Count I is that Defendant allegedly failed to honor its contractual obligation to provide in-person instruction. Accordingly, Plaintiff's claims are not barred by the rule against educational-malpractice-based suits. *See Gociman*, 41

9

F.4th at 882 ("the students do more than allege that the remote education was not good enough. Rather, the students point to an identifiable contractual promise that the university failed to honor").

In *Gociman*, the Seventh Circuit noted that the student plaintiffs "allege[d] that, in exchange for tuition and fees, [the university] promised in-person instruction and access to on-campus facilities and services." *Gociman*, 41 F.4th at 884. To show different sources for the contract, whether express or implied, the plaintiffs "point[ed] to [the university's] catalogs, registration portal, pre-pandemic practice, and different charges for [the university's] online versus on-campus programs . . . ." *Id.* Plaintiff here similarly argues from several sources[4] the existence of an implied promise for in-person instruction. *Gociman* found that the plaintiffs' sources "did not constitute an *express* contract for [the university] to provide in-person educational services," 41 F.4th at 884 (emphasis added), but the court agreed that, taken "as a whole, these sources are sufficient to show an *implied* contract to provide in-person instruction and access to [the university's] campus in exchange for tuition and certain mandatory fees." *Id.* (emphasis added). It is thus apt to examine Plaintiff's purported contract sources to determine whether, taken as a whole and in the light of *Gociman*, Plaintiff has sufficiently shown an implied contract for Defendant to provide in-person instruction and services.

---

[4] These sources include statements on Defendant's website and related promotional materials (Dkt. 19 ¶¶ 23–31); Defendant's course catalog and class registration process (*id.* ¶¶ 32–34); Defendant's historical practice of in-person instruction (*id.* ¶¶ 35–39); and the admission letter Defendants sends to admitted students (*id.* ¶ 40).

Plaintiff presents several sources of Defendant's implied promise to provide in-person instruction to Plaintiff and Class Members: Defendant's website and related promotional materials (Dkt. 19 ¶¶ 23–31); its course catalog and class registration process (*id.* ¶¶ 32–33); its historical practice of in-person instruction (*id.* ¶ 34); and its admission letter (*id.* ¶ 40). Regarding Defendant's website and related promotional materials, Defendant advertises its campus as "[a] place to live, share and do," "[a] healthy, supportive community," and an "ideal college location" in proximity to Naperville's "40+ restaurants." (*Id.* ¶¶ 24, 27.) According to Plaintiff, the website promises that:

> [a] North Central education is much more than memorizing information from textbooks and listening to lectures. It begins with learning how to learn. Smaller class sizes, professors who know your name and specialized first-year programs make you feel at home at North Central—academically and personally—from the day you arrive.

(*Id.* ¶ 30.) Plaintiff alleges these materials entice students by advertising North Central's "state-of-the-art facilities updated with the latest technology and design," performing arts venues, and "specialized first year programs." (*Id.* ¶¶ 24, 29–30.)

As for Defendant's course catalog and class registration process, Plaintiff contends that, in the process of registering for classes, students choose either to be on-campus in Naperville or online. According to Plaintiff, that distinction signals Defendant's understanding of the "difference between the online program and the in-person program." (Dkt. 19 ¶ 32.) Once students elect to take classes on Defendant's Naperville campus, the course catalog lists those classes' "location place and meeting information, including the room number on campus." (*Id.* ¶ 33.) Defendant considers

11

this characterization of its course catalog incomplete and argues that Defendant expressly reserved the right to amend[5] the information in the course catalog.[6]

Plaintiff also advances a second theory of liability: namely, that Defendant created an implied obligation through its customary practice of holding classes in person. According to Plaintiff, those practices—including students' normal "ability to live, study, and take classes in-person and on-campus and take advantage of all of Defendant's offers"—created a reasonable expectation that Defendant "would provide in-person and on-campus instruction" for the entire spring 2020 semester. (Dkt. 19 ¶¶ 39, 42.) Plaintiff argues that Defendant's history of in-person instruction thus implied a "specific, contractual term." (Dkt. 27 at 8.) Finally, Plaintiff relies on Defendant's admission letter as further evidence of Defendant's implied contract to provide in-person instruction and services. In the letter that Plaintiff received upon admission, Defendant welcomed Plaintiff "to our community," referred to students who live on-campus as "resident students," instructed Plaintiff to submit a housing deposit "if [she] plan[ned] to live on campus," and directed her to complete a Housing Application and Roommate Questionnaire. (Dkt. 24.) According to Plaintiff, the letter "promises live, in-person education at one of [Defendant's] actual campuses, not an 'online' education at a 'virtual' campus." (Dkt. 19 ¶ 40.)

---

[5] In a disclaimer, the catalog explains that although "North Central College endeavors to present an accurate overview of the programs, facilities and fees of the College in this publication . . . [it] reserves the right to alter any program, facilities or fees described in this publication without notice or obligation." (Dkt. 23 at 9.)

[6] Defendant provides a link to Plaintiff's archived course catalog. (*See* Dkt. 23 at 9 n.6 (citing Undergraduate Catalog, http://catalog.northcentralcollege.edu/index.php).)

Taking all of these sources "as a whole," *Gociman*, 41 F.4th at 884, Plaintiff sufficiently pleads her breach of contract claim to survive Defendant's motion to dismiss. *Gociman* denied the defendant's motion to dismiss because the plaintiffs presented the defendant's course catalog, online registration portal, and pre-pandemic practice of in-person instruction to "support[] a reasonable inference that in-person instruction, along with access to on-campus facilities" was an implied promise in the contract between plaintiffs and defendant. *Gociman*, 41 F.4th at 884–885. In the same way, Plaintiff here presents Defendant's course catalog and class registration process (Dkt. 19 ¶¶ 32–33) and Defendant's historical practice of in-person instruction (*id.* ¶ 34) as sources of Defendant's implied promise to provide in-person instruction. Plaintiff also presents sources that *Gociman* did not address: Plaintiff shows Defendant's promotional and marketing materials (*id.* ¶¶ 23–31) and Defendant's admission letter (*id.* ¶ 40). Plaintiff's compilation of sources, "taken as a whole," *Gociman*, 41 F.4th at 884, is sufficient to survive Defendant's motion to dismiss.

Ultimately, "taken as a whole," *id.*, Plaintiff plausibly alleges that Defendant agreed to provide in-person "opportunities, experiences, and services" in exchange for her payment of tuition and fees, and that Defendant breached that agreement when it "fail[ed] to provide the promised in-person and on-campus education." (Dkt. 19 ¶¶ 84–86.) Indeed, *Gociman* is virtually identical to this case with regard to Plaintiff's claim concerning Defendant's class registration process and pre-pandemic practices.

13

Defendant submitted a supplemental letter brief (Dkt. 40) offering additional argument in support of its motion to dismiss, but those additional contentions are unpersuasive. Although it is true that Plaintiff does not put forth identical sources as did the *Gociman* plaintiffs, Plaintiff nevertheless reaches the threshold of sufficiency to advance beyond the pleading stage in view of *Gociman*'s admonition to consider the sources "taken as a whole." 41 F.4th at 884. Defendant's argument that Plaintiff's complaint lacks certain details of the *Gociman* plaintiffs' complaint, Dkt. 40 at 2, thus fails. So too for Defendant's argument about Plaintiff's allegations concerning fees paid to Defendant: "taken as a whole" under *Gociman*, Plaintiff's pleading is sufficient to survive Defendants' motion to dismiss.

Plaintiff has presented a "plausible factual narrative that conveys a story that holds together." *Kaminski*, 23 F.4th at 777. Defendant's motion to dismiss Count I is therefore denied.

### B.    Unjust Enrichment (Count II)

In Count II, pleaded in the alternative, Plaintiff asserts an unjust enrichment claim and alleges that Defendant "unfairly and inequitably" retained Plaintiff's benefit—her tuition and fees—even though Defendant ceased providing "in-person educational services and in-person facility access, and an in-person, on campus education experience" for which the monetary payments were collected. (Dkt. 19 ¶¶ 92–95.) Plaintiff alleges that her tuition and fees were only meant to cover "in-person educational services, not a virtual campus and online services," and that such a substitution was of a "lesser value." (*Id.* ¶ 96.)

14

To state such a claim for unjust enrichment under Illinois law, Plaintiff must allege that Defendant "unjustly retained a benefit to [Plaintiff's] detriment, and that [Defendant's] retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Banco Panamericano, Inc. v. City of Peoria*, 880 F.3d 329, 333 (7th Cir. 2018) (citing *HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). In general, a plaintiff may plead an unjust enrichment claim as an alternative basis for liability. *See* Fed. R. Civ. P. 8(a)(3) (the pleading must contain "a demand for the relief sought, which may include relief in the alternative or different types of relief."); *see also Gociman*, 41 F.4th at 886 ("[a]t the pleading stage, a party may plead breach of contract and unjust enrichment claims in the alternative); *Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 704 (Ill. Ct. App. 2005).

In *Gociman*, the Seventh Circuit explained plaintiffs made a pleading error where they erroneously incorporated by reference allegations of the existence of a contract between the parties. But for that error, however, the plaintiffs would have sufficiently pleaded an unjust enrichment claim in the alternative. *Gociman*, 41 F.4th at 887 ("Absent this error, the students adequately pled" the alternative claim). *Gociman*'s plaintiffs adequately pleaded the alternative claim because they "allege[d] that they paid tuition for an in-person educational experience, which the university failed to provide though it retained the benefit of tuition." *Id.* The court further stated that "the parties disagree about whether a contract includes an implied promise to provide students in-person instruction and access to on-campus facilities. *This*

15

*disagreement alone is enough* for the students' unjust enrichment claim to survive a motion to dismiss . . . ." *Id.* (emphasis added).

Plaintiff alleges that Plaintiff and Class Members "conferred a benefit on [Defendant] in the form of monies paid for tuition, fees, and related expenses in exchange for in-person educational services and in-person facility access, and an in-person, on-campus educational experience." (Dkt. 19 ¶ 92.) Plaintiff further claims that Defendant "voluntarily accepted and retained this benefit by accepting payment from Plaintiff and the Class," *id.* at ¶ 94, that Defendant "unfairly and inequitably retained" although Defendant "ceased providing the full education, experiences, and services" for which Plaintiff paid.

Plaintiff's pleading also lacks the deficiency that the plaintiff's pleading in *Gociman* revealed; namely, Plaintiff here did not inadvertently incorporate by reference the complaint's earlier paragraphs alleging the existence of a contract. Plaintiff instead incorporated only the "factual allegations made in Paragraphs 1 through 79" (*id.* at ¶ 90) and excluded any reference to the breach of contract claim contained in Paragraphs 80 through 89. And as in *Gociman*, Plaintiff and Defendant dispute whether the contract includes an implied promise to provide *in-person* instruction, which *Gociman* expressly held is "enough" for the "unjust enrichment claim to survive a motion to dismiss." *Gociman*, 41 F.4th at 887. Accordingly, bound by *Gociman*, this Court must deny Defendant's motion to dismiss Count II.

16

## IV. CONCLUSION

Defendant's motion to dismiss (Dkt. 22) is denied in its entirety.

SO ORDERED in No. 20-cv-05229.

Date: September 18, 2023

JOHN F. KNESS
United States District Judge